# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

**Criminal No.**
**23-CR-10138-WGY**

## UNITED STATES OF AMERICA

### VS.

### DANIEL CLEGGETT

### <u>DEFENDANT'S SENTENCING MEMORANDUM</u>

I.    **Introduction and Background of Defendant**

The defendant, Daniel Cleggett, respectfully submits this sentencing memorandum detailing the application of Title U.S.C. §3553(a) to the facts and circumstances of his offenses. Mr. Cleggett, as the court can discern from the detailed and accurate information provided in the PreSentence Report is a gentleman who is 49 years of age and will be 50 on February 21, 2026. He is married to his wife, Torrey, who is a wonderful young lady and the mother of his three children. They were married in September of 2022. Torrey is a home maker and she is very supportive of Mr. Cleggett. They have three children who are ages 4, 3 and 1. Both Dan and his family reside at 2 Wildwood Circle, Kingston, Massachusetts.

The court is aware from reviewing the PreSentence Report in its detail of his involvement with the various businesses that he was able to establish in the substance abuse rehabilitation business. The court is aware that he purchased, maintained and ran a number of sober living houses and his wife continues to act in that capacity. The government has agreed that two of the properties would be retained by the Cleggett family with his name on the deed and mortgage alone but all running of the property would be by Torrey, especially while Mr. Cleggett is incarcerated.

The defendant has presented the court with documentation that merely seeks to show that the various criminal offenses that are presented to this court have significant mitigating factors that would be of concern under §3553 and the sentencing powers of this court. The defendant submits that as the Probation Department has agreed there is no loss to the banks in that all the mortgages were placed on the properties which were properly maintained, taxes paid and improved to the point where the value of the properties far exceeds the value of the mortgages and there is no loss to the banks.

As it relates to the various insulation companies as set forth in the defendant's Opposition to the PreSentence Report and its supporting documentation, the work that was contracted for by citizens with corporations was performed. There were no complaints made or any objections to quality or timeliness of the completed work. There is no doubt that the defendant has accepted responsibility that he was representing in a fraudulent capacity to the Commonwealth of Massachusetts and various programs that he was contracting with by falsely representing that permits were being obtained for the jobs when, in fact, many jobs were done without proper permitting. He also once banned from working in the insulation business with the Commonwealth of Massachusetts set up a straw corporation utilizing the assistance of his mother and other family members to act in an ownership capacity of the insulation corporations while, in fact, Mr. Cleggett was handling the management decisions and aspects of the same.

The important point the defendant is trying to present to this court is that the work on the insulation companies was performed. The billings were submitted and the money was received in accordance with the terms and conditions of the Mass. Save program and CLEAR Result being a Mass. Save lead vendor. Mr. Cleggett had to, however, purchase the rolling stock (trucks), installation equipment, employees and employment taxes as well as any and all

expenses related to the performance of the duties required under the contracts of the insulation jobs. As pointed out, the defendant also notes that he never received even a salary himself and did not benefit personally financially through the corporations but was rather trying to build a business that would ultimately be self-supporting and ultimately successful.

As it relates to the EIDL loans, the defendant admits that the EIDL loans were obtained from the government but notes that the EIDL applications that were submitted during the pandemic were a product of misrepresentation in that he indicated he was not involved in any illegal activity. The application was done online and electronically filled out and sent to various servers outside of Massachusetts. Mr. Cleggett was advised by financial advisers through the banks that he could submit the documentation and obtain the money on the EIDL loans. Mr. Cleggett did, in fact, submit on April 1, 2020, three different EIDL applications; one for A Vision From God in the amount of $150,000.00, one from Green Save in the amount of $150,000.00 and one from "Daniel Cleggett Sole Proprietorship" for $130,900.00. Mr. Cleggett has indicated that at the time he submitted the application on the Cleggett Sole Proprietorship he submitted that in his own name and it automatically defaulted to a prior application that had been filed under the name of Daniel Cleggett Sole Proprietorship.

In any event, the defendant accepts responsibility for receipt of the money in its entirety and notes that records indicate that a number of the expenditures were legitimate for purposes of the businesses but acknowledges that a significant portion of the Green Save, AVFG and Cleggett Sole Proprietorship loans were used for personal use in violation of the EIDL terms and conditions.

On April 12, 2022, additional loan modification was submitted and requested by Green Save which was no longer in existence as A Vision From God and the other entities had been

established by Mr. Cleggett. Mr. Cleggett asserts that a significant portion of the funds that he had received under the EIDL in the amount of $30-0,000.00 was transferred to another entity. These funds were not used for personal use. The defendant does acknowledge that his communications to the SBA were, indeed, misleading because his mother did not write the email and Green Save account was not new but had, in fact, been opened in 2018. Ultimately, Mr. Cleggett removed his mother as a signatory to the Green Save accounts leaving Mr. Cleggett as the only authorized signatory.

As it relates to the family trust, the defendant has accepted responsibility and clearly did not apply funds received from the trustee of the family trust but, in fact, charged $3000/month for legitimate housing costs for the sober home that the beneficiary of the trust whose money was the trust res resided in and was successfully addressing his issues while in the sober home.

The money that was received by Cleggett from the family trust (beneficiary's brother) was $118,750.00 which was not retained by Mr. Cleggett but, in fact, was handed over to the beneficiary of the trust. The defendant acknowledges therefore that there is fraud to the trust but equitable principles should govern in the sense that the $118,750.00 was, in fact, the beneficiary's money and was given directly to him. Mr. Cleggett did not retain any of those funds.

The defendant agrees with the calculations by the Probation Department as to the criminal history, ultimately resulting in a criminal history of IV. The defendant agrees that there has been an appropriate calculation by the Probation Department as to criminal history as directed by §4A1.1 and 4A1.2 of the Sentencing Guidelines. The defendant agrees that the Probation Department has imposed the cut off of 15 years before the commencement of the present offense for purposes of the time in the calculations. The defendant just points out to the

court that his record of convictions was clearly a product of himself being a severe drug addict which resulted in many of the crimes that he was convicted of in the state courts. The defendant suggests that it was important to note that since that time he has gotten married, become a father of three children and attempted to survive during the pandemic and providing for his family which unfortunately resulted in his involvement in the present cases before this court.

The defendant suggests that the criminal history may very well be over represented but accepts the designation of a criminal history IV. The defendant has requested that the court enter a calculation in the sentencing guidelines of an adjusted Base Offense Level of 14 with 2 points added for more than sophisticated means and supervisory capacity constituting 18 points less 3 for acceptance of responsibility being a final adjusted Base Offense Level of 15 with a criminal history of IV.

The defendant is a human being who clearly has had his flaws in his life resulting in his convictions before the numerous courts of the Commonwealth and his present matters before this court. The defendant, however, annexes copies of many letters of reference and recommendation that he has received from numerous people that have crossed his path as a person individually as well as in the court of the business of the sober homes. The defendant knows that the court reads all of these letters and the defendant suggests that, at the very least, they indicate that he is a person of redeeming factors and good qualities that ultimately can be consistent with his sobriety and responsibilities as a parent and husband and a directive to his ultimate status as a productive citizen upon his release.

## II.   A Probationary Sentence or Home Confinement is Appropriate under §3553(A)

In crafting an appropriate sentence, the court must consider the factors set forth in 18 U.S.C. §3553(a). The guiding principle in sentencing is that a sentence must be sufficient but

not greater than necessary. 18 U.S.C. §3553 (a); <u>Kimbrough vs. United States,</u> 552 U.S. 85,

101 (2007). As such, the sentencing guidelines are "merely advisory, which means that the

district court has considerable leeway to impose a sentence that falls outside the range

suggested." <u>United States vs. Robinson</u>, 433 F.3d 31, 35 (1st Cir. 2005); see <u>United States vs.</u>

<u>Booker</u>, 543 U.S. 220 (2005). Indeed, the guidelines are "generalizations that can point to

outcomes that may appear unreasonable to sentencing judges." See <u>United States vs. Jimenez-</u>

<u>Beltre</u>, 440 F.3d, 514, 518 (1st Cir. 2006). In light of potential conflicts between the guidelines

and an appropriate sentence under the circumstances, courts are free to "impose non-guideline

sentences that override guidelines, subject only to the ultimate requirement of reasonableness."

<u>Id.</u>

Daniel Cleggett,
By his attorney


/s/Kevin J. Reddington, Esq.

**CERTIFICATE OF SERVICE**

I, Kevin J. Reddington, Esq., Attorney for the Defendant, Daniel Cleggett, hereby certify that the following documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 6, 2026.

DEFENDANT'S SENTENCING MEMORANDUM

/s/Kevin J. Reddington, Esq.